FILED

JUL 30 2012

UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF CALIFORNIA

POSTED ON WEBSITE

NOT FOR PUBLICATION

UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF CALIFORNIA
FRESNO DIVISION

| | | |
|---|---|---|
| In re | ) | Case No.  11-18491-B-7 |
| Julie Black, | ) | DC No. UST-1 |
| Debtor. | ) | |

## MEMORANDUM DECISION FOLLOWING HEARINGS ON
## ORDER TO SHOW CAUSE AND MOTION FOR REVIEW OF FEES

This disposition is not appropriate for publication.  Although it may cited for whatever persuasive value it may have (see Fed. R. App. P. 32.1), it has no precedential value.  See 9th Cir. BAP Rule 8013-1.

Robin Tubesing, Esq., appeared on behalf of the Acting United States Trustee, August B. Landis, Esq.

Henry D. Nunez, Esq., appeared on behalf of himself.

This memorandum decision follows a hearing on the court's order to appear and show cause why respondent, Henry D. Nunez, Esq. ("Nunez"), should not be sanctioned and ordered to reimburse the United States Trustee ("UST") for his costs incurred in the investigation of this matter (the "OSC").  The OSC was heard together with the UST's motion for review of fees paid to Nunez in connection with this case (the "Fee Motion").  The issue arose out of Nunez's failure to supervise a non-attorney employee in his office and the unauthorized use of his electronic case filing ("ECF") login and password.  For the reasons set forth below, Nunez will be sanctioned in the amount of $2,000 and ordered to reimburse the UST for his costs.

1    This memorandum decision contains the court's findings of fact and conclusions

2  of law required by Federal Rule of Civil Procedure 52(a), made applicable to this

3  contested matter by Federal Rules of Bankruptcy Procedure 7052 and 9014(c).  The court

4  has jurisdiction over this matter pursuant to 28 U.S.C. § 1334, 11 U.S.C. § 105, and

5  General Order Nos. 182 and 330 of the U.S. District Court for the Eastern District of

6  California.  This is a core proceeding as defined in 28 U.S.C. § 157(b)(2)(A).[1]

7  **Background and Findings of Fact.**

8    On July 27, 2011, a petition was filed in this court initiating a chapter 7 case on

9  behalf of the debtor Julie Black ("Black").  The petition listed Nunez as Black's attorney

10  of record.  Nunez's virtual electronic signature, "/s/ Henry D. Nunez," appeared on the

11  signature line where the petition required the signature of counsel.  The petition, along

12  with the completed schedules and statements, were electronically filed using Nunez's

13  registered account with the court's ECF system.  Nunez's virtual signature also appeared

14  on all of the documents that required the attorney's signature, including the Disclosure of

15  Compensation of Attorney for Debtor(s) required by § 329(a) and Rule 2016(b).

16    At the time of the filing, however, Nunez had no knowledge of who Black was, he

17  had not consulted with her, and he had not agreed to represent Black in her bankruptcy.

18  Black worked for a company located next door to Nunez's office, where she had

19  developed a friendship with Nunez's secretary, Norma Rodriguez ("Rodriguez").  When

20  Black told Rodriguez about her financial troubles, Rodriguez offered to assist Black in

21  completing and filing her bankruptcy petition, schedules, statement of financial affairs,

22

23    [1] Unless otherwise indicated, all chapter and section references are to the Bankruptcy

24  Code, 11 U.S.C. §§ 101–1330, as enacted and promulgated *after* October 17, 2005, the effective
date of the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005 (BAPCPA), Pub.

25  L. No. 109-8, 119 Stat. 23 (enacted Apr. 20, 2005).  All "Rule" or "Bankruptcy Rule" references
are to the Federal Rules of Bankruptcy Procedure, Rules 1001–9036.  All "L.B.R." or "Local

26  Bankruptcy Rule" references are to the Local Rules of Practice for the United States Bankruptcy
Court, Eastern District of California (effective Jan. 29, 2010).  All "L.D.R." or "Local District

27  Rule" references are to the Local Rules of Practice for the United States District Court, Eastern

28  District of California (effective Feb. 8, 2011).

1  and other related documents. Rodriguez did so without obtaining approval or consent
2  from Nunez and without accepting any compensation from Black. Rodriguez was
3  neither a licensed attorney nor a bankruptcy petition preparer.

4        At first, Rodriguez intended to file the petition to show Black's status as a pro se
5  debtor, but the court's ECF system does not accept electronic filings from pro se debtors
6  because they are not registered to e-file and do not have an ECF account. Rodriguez had
7  been given the password and authorization to use Nunez's ECF account in order to file
8  documents for Nunez's clients, so she decided to use his account to file Black's petition.
9  Rodriguez proceeded to put Nunez's virtual signature on the pleadings, thereby
10  misrepresenting the fact that Nunez had actually reviewed, approved and signed the
11  documents. She then filed the petition using Nunez's ECF account and listing Nunez as
12  Black's attorney of record. She intended to later file a substitution of attorney to hide
13  what she had done by giving the impression that Nunez had withdrawn from the case, but
14  she never did so and Nunez remained Black's attorney of record in the ECF system.

15        On July 28, 2011, the court issued its Notice of Chapter 7 Bankruptcy Case,
16  Meeting of Creditors & Deadlines which was served by first-class mail on both Nunez
17  and Black. The meeting of creditors was initially set for September 6, 2011, but Black
18  and Nunez both failed to appear. That prompted the chapter 7 trustee to file and serve on
19  Nunez and Black a motion to dismiss the case on September 14. An opposition to the
20  trustee's motion was filed on behalf of Black on October 4, which included a declaration
21  from Black explaining that personal medical issues had prevented her from appearing.
22  Both the opposition and the declaration displayed Nunez's name as Black's attorney of
23  record in the caption and the signature line, and both pleadings were, again,
24  electronically filed using Nunez's ECF account.

25        The opposition pleadings had been prepared days earlier on September 30. Nunez
26  subsequently represented that his paralegal had prepared the documents, but that Nunez
27  had approved their content and filing. However, at that time Nunez was still unaware
28  that Black was not his client and that documents with his virtual signature were being

3

filed with the court, that he had not actually signed, on behalf of someone who was not his client. He later blamed this failure on his "busy legal practice" and his "outside businesses," which did not allow for him to personally "remember every client's name and case." Rather, he had to "rely on [his] file notes and staff for assistance." The motion to dismiss was later denied and another meeting of creditors was rescheduled to take place on October 31, 2011.

Nunez first became aware of Black's case on or about October 31, 2011, when he noticed on his calendar that Black's meeting of creditors was scheduled for that day. Nunez still did not recognize her name even though he had purportedly reviewed and approved the pleadings filed in opposition to the dismissal motion a month earlier. In response to questioning from Nunez, Rodriguez finally informed him of the situation. Nunez instructed Rodriguez to contact Black to let her know that he would not appear at the meeting of creditors. The record reflects that Black did appear for the meeting but that Nunez did not. Since Nunez was Black's attorney of record, the meeting could not proceed. The trustee had to continue it again to November 14, 2011.

Nunez ultimately decided to represent Black in her bankruptcy case. He met with her to discuss the bankruptcy process and review her petition, schedules, and statements. The meeting of creditors was finally concluded on November 14, 2011, and the trustee filed a Report of No Distribution. Black ultimately received her discharge on January 27, 2012.

When Nunez failed to appear at the second meeting of creditors on October 31, the UST filed the Fee Motion asking the court to review and order disgorgement of any fees that had been paid to Nunez. That matter was set for hearing on December 7, 2011. Nunez filed a declaration in opposition to the Fee Motion explaining how Rodriguez had filed Black's case without his consent or knowledge. His declaration also informed the court that Nunez had given Rodriguez a "warning" for her actions.

After the hearing on the Fee Motion, the court instructed the UST to conduct an investigation regarding Nunez's conduct in the handling of Black's case. The UST

4

separately deposed Nunez and Black and informally questioned Rodriguez. On February 2, 2012, the UST filed a status report with the findings of his investigation. Based thereon, the court issued the OSC on February 28, 2012 directing Nunez to appear and to show cause why he should not be sanctioned. The sanctions suggested in the OSC included a $2,000 payment to the court and reimbursement of the costs incurred by the UST for his investigation of the matter.

In response to the OSC, Nunez filed another declaration explaining his actions, which he believed did not warrant the imposition of sanctions. Nunez appeared on his own behalf at the OSC hearing on March 22, 2012. After hearing arguments from Nunez and the UST, the court permitted Nunez to file a supplementary brief addressing the "duty of care" with respect to the supervision of non-attorney employees, which he did on April 3. Nunez contends that the incident did not breach any duty of care because Rodriguez violated his office policy and concealed her actions from him. Nunez argues that the Black case was a "one time incident," and that the matter had been "adequately handled . . . so as to cause no prejudice and/or harm to the client." Nunez attempts to characterize the issue as a question of "competence" rather than professional responsibility and ethics, and he argues that Black's case was handled competently.

**Analysis and Conclusions of Law.**

The problem that confronts the court here is two-fold. The first, and most serious with regard to its affect on the court, lies in the fact that Nunez failed to protect and prevent the unauthorized access and use of his ECF password and document filing privileges. As a result, pleadings were filed in this court, which falsely and fraudulently represented on their face that they had been filed with the authorization and approval of a licensed attorney and authorized ECF user. Local Bankruptcy Rule 5005.5-1 (in effect at the commencement of this case) provides for the registration of attorneys who are eligible to use the court's ECF system. Rule 5005.5-1(d) specifically prohibits the unauthorized use of a user's name and password to electronically file documents with the court and makes the registered user directly responsible for compliance:

(1) A registered user shall not use his/her username and password to file pleadings or other documents on behalf of someone who is not a registered user.

(2) No person may use a username and password without the permission of the registered user to whom they were issued. *Registered users shall protect the security and confidentiality of their username and password* and prevent their disclosure to any person other than the registered user's authorized agent.

BANKR. E.D. CAL. R. 5005.5-1(d) (emphasis added).

The second problem arises from the fact that Nunez has developed a culture in his law office, due to his "busy legal practice and outside business interests," where non-attorneys are providing legal services to purported "clients" without any supervision or even the knowledge of Nunez whose name identifies the law office. An attorney admitted to practice before the federal courts in the Eastern District of California must comply with California's standards of professional conduct. *See* E.D. CAL. R. 180(e) (adopting the Rules of Professional Conduct of the State Bar of California, Rules 1-100–5-320, and the State Bar Act, codified at California Business & Professions Code §§ 6000–6238), *incorporated by* BANKR. E.D. CAL. R. 1001-1(c). This includes California Rule of Professional Conduct 1-300, which requires that an attorney "not aid any person or entity in the unauthorized practice of law." CAL. RULES OF PROF'L CONDUCT R. 1-300(A). In California, the practice of law "means more than just appearing in court." *In re Garcia*, 335 B.R. 717, 728 (9th Cir. BAP 2005) (citing *Estate of Condon*, 65 Cal. App. 4th 1138, 1142 (1998)). In general, the practice of law includes "legal advice and counsel and the preparation of legal instruments and contracts by which legal rights are secured although such matter may or may not be pending in a court." *In re Agyekum*, 225 B.R. 695, 701 (9th Cir. BAP 1998) (citation omitted) (internal quotation marks omitted); *Bluestein v. State Bar*, 13 Cal. 3d 162, 173 (1974) (internal quotation marks omitted).

The Bankruptcy Court Has The Inherent Authority to Issue Sanctions to Prevent Abuse. The bankruptcy court has both the express and inherent authority to regulate and sanction attorneys who practice before it. *See Peugeot v. U.S. Tr.*

6

1  *(In re Crayton)*, 192 B.R. 970, 975 (9th Cir. BAP 1996). A bankruptcy court's

2  express sanctioning authority derives from the Code and the Rules. *In re Nguyen*,

3  447 B.R. 269, 281 (9th Cir. BAP 2011) (en banc); *see also* BANKR. E.D. CAL. R.

4  1001-1(g) ("Failure of counsel . . . to comply with [the Local Bankruptcy Rules,

5  the Federal Rules of Civil Procedure, and the Federal Rules of Bankruptcy

6  Procedure] . . . may be grounds for imposition of any and all sanctions authorized

7  by statute or [r]ule."). But in the absence of an applicable statute or rule

8  authorizing sanctions, the bankruptcy court may rely on its inherent sanctioning

9  authority. *In re DeVille*, 361 F.3d 539, 551 (9th Cir. 2004).

10      The Supreme Court has recognized that the federal district courts, through

11  their status as courts of justice, possess the inherent power to sanction. *See*

12  *Chambers v. NASCO, Inc.*, 501 U.S. 32, 43–45 (1991) ("Courts of justice are

13  universally acknowledged to be vested, by their very creation, with power to

14  impose silence, respect, and decorum, in their presence, and submission to their

15  lawful mandates." (citation omitted) (internal quotation marks omitted)). The

16  Ninth Circuit subsequently held that bankruptcy courts also possess the same

17  inherent power. *Caldwell v. Unified Capital Corp. (In re Rainbow Magazine,*

18  *Inc.)*, 77 F.3d 278, 284 (9th Cir. 1996). The bankruptcy court's inherent authority

19  derives from the very creation of the court and is evidenced by Congress's grant

20  of power to the bankruptcy court under § 105(a) to prevent any abuse of process.

21  *Id.* at 283–84 ("By providing that bankruptcy courts could issue orders necessary

22  'to prevent an abuse of process,' Congress impliedly recognized that bankruptcy

23  courts have the inherent power to sanction that *Chambers* recognized exists within

24  Article III courts.").

25      The court's inherent authority allows it to sanction a "broad range" of

26  improper conduct. *Knupfer v. Lindblade (In re Dyer)*, 322 F.3d 1178, 1196 (9th

27  Cir. 2003) (citing *Fink v. Gomez*, 239 F.3d 989, 992–93 (9th Cir. 2001)

28  (determining limitation of federal district court's inherent sanctioning authority)).

7

1   This sanctioning authority even applies when addressing misconduct outside of
2   the courtroom. *See W. Sys., Inc. v. Ulloa*, 958 F.2d 864, 873 (9th Cir. 1992)
3   (citing *Chambers*, 501 U.S. at 57).

4           The authority to sanction attorney misconduct arises not only from the
5   court's inherent powers to manage its cases and its courtroom, but also from the
6   attorney's role as an officer of the court. *In re Brooks-Hamilton*, 400 B.R. 238,
7   247 (9th Cir. BAP 2009) (citing *Chambers*, 501 U.S. at 43; *In re Snyder*, 472 U.S.
8   634, 643 (1985)). "When an attorney appears before a federal court, he is acting
9   as an officer of that court, and it is that court which must judge his conduct."
10  *Galam v. Carmen (In re Larry's Apartment, LLC)*, 249 F.3d 832, 838 (9th Cir.
11  2001) (internal quotation marks omitted) (citing *Cord v. Smith*, 338 F.2d 516, 524
12  (9th Cir. 1964)).

13          As the Ninth Circuit has noted, "With respect to the court's inherent power,
14  . . . an attorney admitted to a particular bar may be disciplined for conduct that
15  violates that bar's *local rules of professional conduct*." *United States v. Wunsch*,
16  84 F.3d 1110, 1114 (9th Cir. 1996) (emphasis added) (citation omitted).

17          Here, there is no question that Nunez failed to protect his ECF account
18  from unauthorized use by one of his employees. If Nunez had implemented
19  effective protective and oversight measures, Rodriguez never could have filed a
20  petition on behalf of Black without Nunez's knowledge. Nunez declares that
21  Rodriguez's conduct with regard to this case was a "one time incident" that
22  violated his office policy. However, he offers no explanation or details as to what
23  that policy is. Further, by his own admission, Nunez was too "busy" to know who
24  his clients are or what is flowing through his office and getting filed with the
25  court. The court finds Nunez's "one time incident" defense to be simply
26  unbelievable.

27          Nunez completely ignores the fact that Rodriguez placed his virtual
28  signature on numerous documents that he never signed, thereby perpetrating a

8

fraud on the court. He says nothing about the office "policy" for the signing of documents and the use of virtual signatures. The fallacy in Nunez's "office policy" argument is apparent in the declaration that was filed on March 21, 2012, in response to the OSC. Nunez states that he was so busy with his legal practice and "outside business," that "I have to rely on my file notes and staff for assistance." However, it is apparent that Nunez never reviewed any "file notes" in connection with the case, even when he purportedly approved Black's opposition to the trustee' motion to dismiss. Had he attempted to do so, he certainly would have realized that either (1) there were no file notes for Black's case, or (2) the file contained e-filed documents that he had never signed.[2]

In addition, it is undisputed that Rodriguez engaged in the unauthorized practice of law when she met with and advised Black, prepared Black's bankruptcy pleadings, and filed them without Nunez's review and approval. As the Bankruptcy Appellate Panel ("BAP") has observed, "Solicitation of information which is then translated into completed bankruptcy forms is the

---

[2]Rodriguez's use of Nunez's virtual signature also violated Local Rule 9004-1(c)(1)(c) and (d) (in effect at the commencement of the case) because there was no corresponding document in the file with Nunez's actual signature. LBR 9004-1(c)(1)(c) and (d) states as follows:

(c) The use of "/s/ Name" or a Software Generated-Electronic Signature. The use of "/s/ Name" or a software-generated electronic signature on documents constitutes the *registered user's representation that an originally signed copy of the document exists* and is in the registered user's possession at the time of filing. (emphasis added.)

(d) Retention Requirements When "/s/Name" or a Software-Generated Electronic Signature is Used. When "/s/Name" or a software-generated electronic signature is used in an electronically filed document to indicate the required signature(s) of persons other than that of the registered user, *the registered user shall retain the originally signed document in paper form for no less than three(3) years following the closing of the case.* On request of the Court, the registered user shall produce the originally signed document(s) for review. The failure to do so may result in the imposition of sanctions on the Court's own motion, or upon motion of the case trustee, U.S. Trustee, or other party. (emphasis added.)

9

unauthorized practice of law, whether by website or otherwise, as is advising a debtor of the availability of particular exemptions or choosing those exemptions." *Frankfort Digital Servs., Ltd. v. Neary (In re Reynoso)*, 315 B.R. 544, 552 (9th Cir. BAP 2004) (citations omitted).

Black had no knowledge of what she had to do in order to properly file a bankruptcy petition, so Rodriguez, as a friend, offered assistance. Without the supervision of Nunez, Rodriguez completely filled out Black's petition, schedules, and statements. By helping Black in the preparation and filing of her bankruptcy documents, Rodriguez was clearly engaging in the unauthorized practice of law. What remains for the court to decide is whether the facts and circumstances that allowed this "incident" to happen in the first place rise to the level that justifies sanctions against Nunez under the court's inherent authority.

Disciplinary Process and Due Process. As the Ninth Circuit has previously mentioned, there is "no uniform procedure for disciplinary proceedings in the federal system." *In re Lehtinen*, 564 F.3d 1052, 1062 (9th Cir. 2009) (citation omitted) (internal quotation marks omitted). As a result, the "individual judicial districts are free to define the rules to be followed and the grounds for punishment." *Id.* (citation omitted) (internal quotation marks omitted). In the Eastern District of California, the bankruptcy court is empowered to supervise and discipline attorneys pursuant to L.B.R. 1001-1(c), which specifically incorporates the district court's L.D.R. 184. L.D.R. 184(a), titled "Discipline," provides, in pertinent part, the following:

> In the event any attorney subject to [the Local District Rules and Local Bankruptcy Rules] engages in conduct that may warrant discipline or other sanctions, any Judge . . . may, after reasonable notice and opportunity to show cause to the contrary, take any [ ] appropriate disciplinary action against the attorney. In addition to or in lieu of the foregoing, the Judge . . . may refer the matter to the disciplinary body of any Court before which the attorney has been admitted to practice.

E.D. CAL. R. 184(a), *incorporated by* BANKR. E.D. CAL. R. 1001-1(c). This rule states that the court "may refer" a matter involving attorney discipline to the appropriate

1   disciplinary authority. However, a plain reading of the rule shows that such referral is

2   only discretionary, and the bankruptcy court itself may hear the disciplinary matter. *See*

3   *Lehtinen*, 564 F.3d at 1062.

4        While the disciplinary procedures in this district appear flexible, what is required

5   before the court takes disciplinary action in any case is that the attorney subject to the

6   discipline be provided with procedural due process, including reasonable notice and an

7   opportunity to be heard. *Crayton*, 192 B.R. at 978 (citing *In re Ruffalo*, 390 U.S. 544,

8   550 (1968); *Rosenthal v. Justices of the Supreme Court of Cal.*, 910 F.2d 561, 564 (9th

9   Cir. 1990)); *see also* E.D. CAL. R. 184(a) (requiring "reasonable notice and opportunity

10  to show cause to the contrary" before taking disciplinary action).

11       <u>Nunez's Conduct Was Sanctionable.</u> "Before imposing sanctions under its

12  inherent sanctioning authority, a court must make an explicit finding of bad faith or

13  willful misconduct," and "bad faith or willful misconduct consists of something more

14  egregious than mere negligence or recklessness." *Dyer*, 322 F.3d at 1196 (citing *Fink*,

15  239 F.3d at 992–94); *cf.* CAL. RULES OF PROF'L CONDUCT R. 1-100(A) ("For a *willful*

16  *breach* of any of these rules, the Board of Governors has the power to discipline

17  members as provided by law." (emphasis added)). "Mere ignorance or inadvertence is

18  not enough to support a sanction award under the inherent authority." *Dyer*, 322 F.3d at

19  1196–97 (citing *Fink*, 239 F.3d at 992–93); *see also Zambrano v. City of Tustin*, 885

20  F.2d 1473, 1480 (9th Cir. 1989) ("A practice that punishes mere negligence on the part

21  of counsel is not necessary to the orderly functioning of the court system.").

22       While an attorney's reckless conduct alone is not sanctionable, recklessness

23  coupled with an additional factor, such as acting for an improper purpose, is sufficient to

24  make a finding of bad faith or willful misconduct. *Fink*, 239 F.3d at 994. Conduct that

25  is "outrageously improper, unprofessional and unethical under any reading of

26  California's ethical standards for attorneys" has been found to constitute willful conduct

27  or conduct tantamount to bad faith, allowing the court to impose sanctions pursuant to its

28  inherent authority. *Lehtinen*, 564 F.3d at 1061 (internal quotation marks omitted); *cf.*

11

1    *Zitny v. State Bar*, 64 Cal. 2d 787, 792 (1966) ("To establish a wilful breach [that

2    justifies attorney discipline], it must be demonstrated that the person charged acted or

3    omitted to act purposely, that is, that he knew what he was doing or not doing and that he

4    intended either to commit the act or to abstain from committing it." (citations omitted)).

5         Here, it is clear that Rodriguez's handling of Black's case without Nunez's

6    supervision constituted both (1) a violation of Local Bankruptcy Rule 5005.5-1, and (2)

7    the unauthorized practice of law under California Rule of Professional Conduct 1-

8    300(A).[3] Nunez argues that he was unaware of Rodriguez's conduct and therefore could

9    not have knowingly or willfully violated Local Bankruptcy Rule 5005.5-1 nor aided

10    Rodriguez in the unauthorized practice of law. However, the court rejects Nunez's

11    arguments and finds that his actions, or inactions, did rise to the level of willfulness to

12    justify the imposition of sanctions.

13         First, the court does acknowledge the fact that, *at the time* Rodriguez was

14    preparing and filing Black's bankruptcy documents, and making fraudulent

15    representations to the court regarding Nunez's roll in the case, Nunez had no *actual*

16    knowledge of what she was doing. But therein lies the fundamental problem. Nunez

17    maintains a law practice under his name. He has a staff of people, like Rodriguez and

18    the paralegal who prepared Black's opposition to the trustee's motion to dismiss, who are

19    trained to prepare and file pleadings and documents to assist him in the practice of law.

20    However, by Nunez's own admission, his law practice is so "busy" and he has so many

21    "outside business" interests that he does not even know who his clients are and he does

22    not have time to supervise, or to even know about, the cases moving through his office.

23

24    [3] In his supplemental brief, Nunez cited California Rule of Professional Conduct 3-110 in

25    arguing that he did not breach the duty to supervise his non-attorney employees. While the

         discussion notes for that rule do mention such a duty, that relates only to the duty articulated in

26    the rule, which is one of competence owed to a client. *See* CAL. RULES OF PROF'L CONDUCT R.

         3-110(A) ("A member shall not intentionally, recklessly, or repeatedly fail to perform legal

27    services with competence."). Here, the issue is not about whether Nunez's employees did

28    something incompetently so rule 3-110 is inapplicable to the court's discussion.

                                                 12

1    Nunez was served with the court's Notice of Commencement of the Case, but he

2    obviously never looked at it. Nunez purportedly reviewed and approved the pleadings

3    that were later filed for Black in opposition to the trustee's motion to dismiss, but he still

4    didn't realize that Black was not his client. Nunez had no actual knowledge of this

5    bankruptcy case until October 31, 2011, when he saw an entry on his calendar for the

6    continued 341 meeting. Even then, he was too busy with other matters to attend the

7    meeting.

8         The court rejects Nunez's argument that the Black case was a "one-time" incident.

9    Nunez has knowingly and willfully developed a culture in his law office where legal

10   advice is being given to "clients" and legal work is being done and filed with the court,

11   fraudulently bearing his virtual signature, because he is "too busy." Even when Nunez

12   did learn about the details of Black's case from Rodriguez on October 31, he did nothing

13   to inform the court about it. It was not until almost a month later on November 23 that

14   he brought that information to the court's attention when he was forced to respond to the

15   UST's Fee Motion. Nunez was well aware of the situation in his office and his failure,

16   indeed his inability, to supervise the work flow through his office was much more than

17   mere negligence or recklessness.

18        Nunez argues that his conduct in this case, and his failure to timely inform the

19   court about the problem, was ultimately harmless since he subsequently decided to

20   represent Black in her case, which favorably resulted in Black receiving her discharge.

21   However, by learning of Rodriguez's misconduct in Black's case and then agreeing to

22   become Black's attorney, Nunez was, in effect, validating Rodriguez's unauthorized

23   conduct after the fact. As a result, Nunez was indirectly but knowingly aiding Rodriguez

24   in the unauthorized practice of law. *Cf. Bluestein*, 13 Cal. 3d at 173 (stating, based on

25   former version of applicable rule, that attorneys were prohibited "directly or indirectly

26   aiding or abetting the unauthorized practice of law" (emphasis omitted) (internal

27   quotation marks omitted) (citing *Crawford v. State Bar*, 54 Cal. 2d 659, 666 (1960))).

28        <u>Reasonableness of Sanctions.</u> Previously, the BAP adopted the American Bar

13

1    Association Standards for Imposing Lawyer Sanctions ("ABA Standards"), using them

2    as the minimum standard in determining the reasonableness of sanctions. *Crayton*, 192

3    B.R. at 980–81. The ABA Standards "promote the thorough, rational consideration of

4    relevant factors, and help to achieve consistency when imposing attorney discipline." *Id.*

5    at 980.

6         More recently, however, the BAP, sitting en banc, modified its holding in *Crayton*

7    that required the bankruptcy court to apply the ABA Standards. *Nguyen*, 447 B.R. at

8    277–78. The panel reasoned that

9              requiring a bankruptcy court to "slavishly intone" the ABA Standards
              makes little sense given that sanctions are within the sound discretion of
10             the bankruptcy court, and that deference should be given to bankruptcy
              courts' choice of sanction in that they have the inherent power to run the
11             type of courtroom that they believe best serves justice.

12   *Id.* at 277 (citation omitted) (internal quotation marks omitted). The BAP therefore held

13   that the bankruptcy courts "remain free to consult the ABA Standards when formulating

14   sanctions[, but] it is not reversible error if a bankruptcy court does not do so." *Id.* at 278.

15   Yet, not having to apply the ABA Standards does not provide the bankruptcy court with

16   unfettered discretion to impose any sanctions it desires, however severe. The court's

17   sanctions must still be reasonable, and "reasonableness continues to require that the

18   sanction imposed be within the scope of the bankruptcy court's authority and that the

19   sanction be tailored to address the misconduct." *Id.* at 280.

20        Here, a sanction of $2,000 is relatively mild in light of what happened in this case.

21   Nunez fails to appreciate that there can be absolutely no tolerance for what happened

22   here. It cannot be smoothed over and approved after the fact. The integrity of the

23   bankruptcy court and the bankruptcy system itself is jeopardized when non-attorneys are

24   permitted to give legal advice, prepare and file bankruptcy petitions, and fraudulently

25   represent to the court that the activity has been supervised and approved by a licensed

26   attorney. As an officer of the court, Nunez had an absolute duty to prevent that from

27   happening in his office. Such conduct cannot be permitted under any circumstances,

28

14

1  even once, and it cannot be excused by subsequently arguing "no harm."

2        It is the court's hope that a $2,000 sanction will sufficiently motivate Nunez to

3  run his office's operations within the confines of the local and professional rules. *See*

4  *Zambrano*, 885 F.2d at 1479 (allowing imposition of "relatively mild" fines under

5  court's inherent authority); *Mark Indus., Ltd. v. Sea Captain's Choice, Inc.*, 50 F.3d 730,

6  733 (9th Cir. 1995) (stating that "[a]n appropriate award would be, at most, $5,000

7  payable to the court" under court's inherent authority in that case). The reimbursement

8  of costs incurred by the UST is appropriate to compensate the UST for the expense and

9  effort he and his staff undertook to uncover and clarify Nunez's misconduct. *See*

10  *Lehtinen*, 564 F.3d at 1059 (stating that sanctions under the inherent authority are

11  appropriate when they are compensatory).

12  **Conclusion.**

13        Based on the foregoing, Nunez will be ordered to pay a sanction in the amount of

14  $2,000 to the court within 14 days. Within 21 days, the UST shall file and serve on

15  Nunez a statement of the costs incurred in his investigation and prosecution of this

16  matter. Thereafter, Nunez shall have 14 days to either pay the UST's bill of costs or file

17  an opposition, stating specifically the basis for his opposition to each cost item, and set

18  the matter for a noticed hearing.

19        With regard to the UST's Fee Motion, the record shows that Nunez did not

20  receive any fees in connection with this case. Accordingly, there is nothing for Nunez to

21  disgorge and the Fee Motion will be denied.

22        Dated: July  *30* , 2012

23

24  

25  W. Richard Lee
    United States Bankruptcy Judge

26

27

28

15

Julie Black, Case No. 11-18491-B-13


Julie Black
798 Spruce Avenue, #102
Clovis, CA 93611

Henry D. Nunez, Esq.
Attorney at Law
4478 W. Spaatz Ave.
Fresno, CA 93722

Trudi Manfredo, Esq.
Chapter 7 Trustee
575 E. Alluvial, #103A
Fresno, CA 93720

Robin Tubesing, Esq.
Attorney at Law
Office of the U.S. Trustee
United States Courthouse
2500 Tulare Street, Suite 1401
Fresno, CA 93721